UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BRIDGETT T. GRAHAM,

        Plaintiff,

v.                                              Case No. 2:17-cv-153-FtM-DNF

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

**OPINION AND ORDER**

Plaintiff, Bridgett T. Graham, seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her claim for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint legal memorandum setting forth their respective positions. For the reasons set out herein, the Court finds that the decision of the Commissioner is due to be **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C § 405(g).

**I. Social Security Act Eligibility, Procedural History, Standard of Review, and ALJ's Findings**

The law defines disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less

than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d) (2); 20 C.F.R. §§ 404.1505-404.1511.

A.     **Procedural History**

Plaintiff filed an application for SSI on October 21, 2012, and an application for a period of disability and DIB on October 24, 2012. (Tr. 119-20, 220-21, 227-32). In both applications, Plaintiff alleged a disability onset date of October 2, 2012. (Tr. 119-20, 220-21, 227-32). Plaintiff's applications were denied initially on April 15, 2013, and upon reconsideration on September 9, 2013. (Tr. 107, 117, 133, 147, 151-52, 156-58, 163, 166-69,173-75). Plaintiff requested a hearing and on October 15, 2015, an administrative hearing was held before Administrative Law Judge William F. Taylor (the "ALJ"). (Tr. 53-92). On November 4, 2015, the ALJ rendered his decision finding Plaintiff not disabled. (Tr. 24, 41). Plaintiff requested review of the decision, but the Appeals Council denied review on February 7, 2017. (Tr. 1-4). Plaintiff initiated this action by Complaint (Doc. 1) on March 17, 2017.

B.     **Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking

into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't. of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C.A. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that she is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, she will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(I).

At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that her impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Sbpt. P. App. 1. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(iii). If she meets this burden, she will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that her impairment meets or equals one of the impairments listed in Appendix 1, she must prove that her impairment prevents her from performing her past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of her past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f) . If the claimant can still perform her past relevant work, then she will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, she will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("grids"), and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to Claimant to show that she is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

C.      **The ALJ's Findings**

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 2, 2012, the alleged onset date. (Tr. 29). At step two, the ALJ found that Plaintiff had the following severe impairments: coronary artery disease; chronic heart failure; status post myocardial infarction with stent placement; hypertension; obesity;

anxiety; a mood disorder; an obsessive-compulsive disorder (OCD); a panic disorder without agoraphobia; and premenstrual tension syndrome. (Tr. 29-30). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 30).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she has the following additional limitations: she can lift, carry, push, and pull 20 pounds occasionally; she can frequently lift, carry, push, and pull 10 pounds; she can sit for 6 hours; she can stand and/or walk for 6 hours; she can frequently stoop, crouch, kneel, crawl, and balance; she has no limits on hearing, seeing, or speaking; she can frequently climb stairs and ramps; she should never climb ladders, ropes, or scaffolds; she can perform reaching bilaterally in all directions including overhead; she has no limits on fingering, feeling, and handling; she should avoid concentrated exposure to dusts, fumes, odors, gases, smoke, irritating inhalants, and areas of poor ventilation; she should avoid concentrated exposure to vibrations; she has no limits on the use of her hands and feet for the operation of controls; she should avoid concentrated exposure to extreme heat and cold; she can work at heights and near bodies of water when protected from falls; she should avoid working with or near dangerous and moving type of equipment or machinery; she should never operate motor vehicles to include fork lifts, taxi cabs, or van driver of any type; she should have no work assignments requiring the stocking of merchandise or arranging items on a shelf; she can perform simple routine repetitive job tasks; she can understand, remember, and carry out job instructions related to simple routine repetitive job duties; she can accept supervision; she can frequently interact with co-workers and occasionally interact with the general public, but she work's best with objects and not with people; she can maintain attention, concentration, and pace if allowed scheduled work breaks of 15 minutes in the first half of the workday, 15 minutes break in the second half of the workday, and a 30-minute midday break; she can be punctual and work within a set schedule; she requires no special supervision to complete work assignments pertaining to simple, routine repetitive job tasks; she can make work related decisions regarding

> simple routine and repetitive job assignments; she can adapt to changes in job duties and work assignments, if the changes are infrequent and gradually introduced; and she should have no fast paced quota driven or factory production type of work assignments.

(Tr. 31-32). At step four, the ALJ determined that Plaintiff was unable to perform her past relevant work counter salesperson, bookkeeper and inventory control clerk. (Tr. 39).

At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 40). Relying on the testimony of a vocational expert, the ALJ found that Plaintiff could perform such jobs as silver wrapper, merchandise marker, and router. (Tr. 40-41). The ALJ concluded that Plaintiff was not under a disability from October 2, 2012, the alleged onset date, through the date of the decision, November 4, 2015. (Tr. 41).

## II.   Analysis

Plaintiff raises four issues on appeal: (1) whether the ALJ erred by failing to consider, weigh, or even reference the evidence and opinion from Ron Saberton, LMHC; (2) whether the Appeals Council erred by failing to consider and weigh new and material evidence from Ron Saberton, LMHC; (3) whether the ALJ erred by relying on the testimony of a vocational expert whose opinion concerning job numbers is not supported by substantial evidence; and (4) whether the ALJ erred by relying on the testimony of a vocational expert whose testimony conflicted with the Dictionary of Occupational Titles ("DOT"). The Court will address each issue in turn.

### a) Whether the ALJ erred by failing to consider, weigh, or even reference the evidence and opinion from Ron Saberton, LMHC.

Plaintiff argues that the ALJ erred by failing to weigh or even reference the opinion of Licensed Mental Health Counselor (LMHC) Ron Saberton. (Doc. 28 p. 11). Plaintiff argues that

while Mr. Saberton is not an acceptable medical source, the ALJ was required to consider his opinion for purposes of establishing the severity of Plaintiff's impairment. (Doc. 28 p. 11). In response, Defendant argues that remand is inappropriate because the ALJ was not required to discuss Mr. Saberton's opinions and the ALJ's decision allows a claimant or subsequent reviewer to follow the ALJ's reason in denying Plaintiff's claim. (Doc. 28 p. 12).

The record shows that on October 14, 2015, Mr. Saberton, a one-time examiner, provided a statement indicating that Plaintiff had been enduring chronic exogenous depression since her first cardiac arrest over three years ago. (Tr. 1010). Mr. Saberton noted that Plaintiff experienced intermittent pain in her back and shoulder which has led to continuing anxiety and extreme startle reflex. (Tr. 1010). Mr. Saberton noted that Plaintiff's work and social and family life have been adversely affected and diminished as a result of this range of symptoms. (Tr. 1010). Mr. Saberton noted that medications have been helpful only to a minimal extent. (Tr. 1010). Mr. Saberton found that for about one week each month, the Plaintiff can be expected to be laid up, exhausted, frustrated, and depressed. (Tr. 1010). Mr. Saberton noted that none of Plaintiff's physical symptoms have been adequately explained by the number of specialists she had seen. (Tr. 1010). Mr. Saberton noted, however, that Plaintiff's mental breakdown is logically and easily explained by her physical trauma. (Tr. 1010). Mr. Saberton opined that without some respite from the responsibility of caring for her multigenerational family, holding down a full-time job, and maintaining a home the Plaintiff's condition will probably worsen. (Tr. 1011). Mr. Saberton opined that Plaintiff would not be able to hold down a job for physical reasons and that Plaintiff neither has demeanor nor mental disposition to carry on a normal working life. (Tr. 1011). Mr. Saberton completed a medical source statement outlining various less than sedentary physical limitations based on his own office observations. (Tr. 1008). He opined that Plaintiff's ability to concentrate

while Mr. Saberton is not an acceptable medical source, the ALJ was required to consider his opinion for purposes of establishing the severity of Plaintiff's impairment. (Doc. 28 p. 11). In response, Defendant argues that remand is inappropriate because the ALJ was not required to discuss Mr. Saberton's opinions and the ALJ's decision allows a claimant or subsequent reviewer to follow the ALJ's reason in denying Plaintiff's claim. (Doc. 28 p. 12).

The record shows that on October 14, 2015, Mr. Saberton, a one-time examiner, provided a statement indicating that Plaintiff had been enduring chronic exogenous depression since her first cardiac arrest over three years ago. (Tr. 1010). Mr. Saberton noted that Plaintiff experienced intermittent pain in her back and shoulder which has led to continuing anxiety and extreme startle reflex. (Tr. 1010). Mr. Saberton noted that Plaintiff's work and social and family life have been adversely affected and diminished as a result of this range of symptoms. (Tr. 1010). Mr. Saberton noted that medications have been helpful only to a minimal extent. (Tr. 1010). Mr. Saberton found that for about one week each month, the Plaintiff can be expected to be laid up, exhausted, frustrated, and depressed. (Tr. 1010). Mr. Saberton noted that none of Plaintiff's physical symptoms have been adequately explained by the number of specialists she had seen. (Tr. 1010). Mr. Saberton noted, however, that Plaintiff's mental breakdown is logically and easily explained by her physical trauma. (Tr. 1010). Mr. Saberton opined that without some respite from the responsibility of caring for her multigenerational family, holding down a full-time job, and maintaining a home the Plaintiff's condition will probably worsen. (Tr. 1011). Mr. Saberton opined that Plaintiff would not be able to hold down a job for physical reasons and that Plaintiff neither has demeanor nor mental disposition to carry on a normal working life. (Tr. 1011). Mr. Saberton completed a medical source statement outlining various less than sedentary physical limitations based on his own office observations. (Tr. 1008). He opined that Plaintiff's ability to concentrate

would be limited to less than 1/3 of a workday. (Tr. 1009). He further opined that Plaintiff would be off task more than 60 percent of the time and would miss most days of work every month. (Tr. 1009).

Only acceptable medical sources can (1) establish the existence of a medically determinable impairment, (2) give medical opinions, and (3) be considered treating sources whose medical opinions may be entitled to controlling weight. See Social Security Ruling (SSR) 06-03P, 2006 WL 2329939, at *1. Nonetheless, evidence from non-acceptable sources, such as mental health counselors, may be used to show the severity of a claimant's impairment and how it affects the individual's ability to function. See 20 C.F.R. §§ 404.1513(d), 416.913(d); SSR 06-03p, 2006 WL 2329939, at *6 (explaining that because "there is a requirement to consider all relevant evidence in an individual's case record," it is the policy of the SSA that the "case record should reflect the consideration of opinions from ... 'non-medical sources' who have seen the claimant in their professional capacity"). An ALJ should generally explain the weight given to opinions from "other sources," or "otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03p, 2006 WL 2329939, at *6.

In this case, the Court does not find it appropriate to remand this case for the ALJ's failure to specifically address or weigh Mr. Saberton's opinion. As Plaintiff acknowledges, Mr. Saberton is not an acceptable medical source and his opinion cannot establish the existence of a medically determinable impairment. As a one-time examining, non-acceptable medical source, Mr. Saberton's opinion was not entitled to any particular deference. *Adams ex rel. A.M.P. v. Astrue*, 2012 WL 2923918, at *5 (N.D. Ala. July 16, 2012).

The ALJ's RFC analysis is such that his reasoning can be followed. The ALJ's RFC discussion provides a detailed summary of the objective medical evidence and his analysis for how he arrived at Plaintiff's RFC. (Tr. 31-39). The ALJ noted that the objective medical evidence did not support the existence of limitations greater than his RFC finding. (T. 32-33). The ALJ gave little weight to the opinion of another mental health counselor who opined that Plaintiff would have difficulty holding a job due to various physical and mental limitations. (Tr. 38-39, 684-85). Although the ALJ did not explicitly discuss or weigh Mr. Saberton's opinions, his conclusion that the RFC assessment "is supported by the objective medical evidence contained in the record" (Tr. 39), is sufficient to show that he rejected Mr. Saberton's opinions because they were contrary to the objective medical record, which the ALJ thoroughly discussed. (Tr. 31-39). Further, the ALJ also considered that Plaintiff's activities of daily living and her testimony that she ran a flea market booth three days a week for eight hours a day selling "a little bit of everything" supported his RFC finding. (Tr. 59-60, 37-38).

### b) Whether the Appeals Council erred by failing to consider and weigh new and material evidence from Ron Saberton, LMHC.

Plaintiff argues that the Appeals Council erred by failing to consider and weigh the Mental RFC Assessment form completed by Mr. Saberton on October 15, 2015. (Doc. 28 p. 15-18). Plaintiff argues that this form is new and material evidence that relates back to the date prior to the ALJ's decision. (Doc. 28 p. 17). Plaintiff notes that the Appeals Council indicated that it had received Mr. Saberton's Mental RFC Assessment form, but in its explanation, did not reference the assessment, but rather some evidence that does not appear to pertain to Plaintiff. (Doc. 28 p. 16).

Defendant argues that the Appeals Council stated that it had considered Mr. Saberton's Mental RFC Assessment form. (Doc. 28 p. 18). Defendant contends that the new evidence does

not render the ALJ's decision unsupported by substantial evidence. (Doc. 28 p. 19). Finally, Defendant contends that the Appeal Council's reference to evidence that may have belonged to someone else's medical file was harmless error as the Appeals Council did not consider this evidence. (Doc. 28 p. 19-20).

The record shows that the evidence submitted to the Appeals Council was a Mental RFC Assessment form completed by Mr. Saberton on October 15, 2015. (Tr. 1105-1107). In the assessment, Mr. Saberton opined that Plaintiff has various moderate to very extreme limitations in different areas of basic mental work activities. (Tr. 1105-1107). Mr. Saberton noted that when Plaintiff experiences the pain, frustration, and depression that comes with her illnesses, she is unable to participate in any kind of work or social environment. (Tr. 1106). Mr. Saberton opined that before her illness Plaintiff had been an effective and efficient employee, but not at all since her cardiac failure and ensuing symptoms. (Tr. 1106).

A claimant is generally permitted to present new evidence at each stage of his administrative process. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1261 (11th Cir. 2007). Evidence submitted for the first time to the Appeals Counsel is determined under a Sentence Four analysis. *Id*. "The Appeals Council must consider new, material evidence, and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Id*. (citing 20 C.F.R. §§ 404.970(b)). New evidence is considered material and thereby warranting a remand if "'there is a reasonable possibility that the new evidence would change the administrative outcome.'" *Flowers v. Comm'r of Soc. Sec.*, 441 F. App'x 735, 745 (11th Cir. 2011) (citing *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987). Evidence is chronologically relevant if it relates to the period on or

before the date of the ALJ's decision. *See Keeton v. Dep't of Health and Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In this case, the Court does not find it appropriate to remand because the ALJ did not consider and weigh the Mental RFC Assessment form completed by Mr. Saberton. As explained above, Mr. Saberton is a one-time examiner whose opinion is not entitled to any special deference. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (2016) (explaining that generally greater weight is given to treating sources over reports of individual examinations, such as consultative examinations). The additional evidence was cumulative of the October 14, 2015 Medical Source Statement and letter from Mr. Saberton that was before the ALJ (Tr. 1008-11), and none of it undermined the substantial evidence supporting the ALJ's decision. Further, although the Appeals Council cited to medical evidence that appears to be from another file, this fact does not undermine the Commissioner's decision given that the Appeals Council explicitly provided that it did not consider this evidence.

### c) Whether the ALJ erred by relying on the testimony of a vocational expert whose opinion concerning job numbers is not supported by substantial evidence.

Plaintiff argues that the ALJ's step five finding that there are a significant number of jobs which Plaintiff can perform is unsupported by substantial evidence because the ALJ based his conclusion on unreliable vocational expert ("VE") testimony. (Doc. 28 p. 20). Plaintiff argues that the VE based her testimony on the software program Job Browser Pro which is not a reliable source of job numbers and is not listed as one of the sources of which the Agency takes administrative notice. (Doc. 28 p. 23).

In response, Defendant argues that Plaintiff has failed to present the Court with evidence of how the VE's numbers were flawed or would have differed or been reduced below the

significant numbers threshold. (Doc. 28 p. 25). Further, Defendant argues that Job Browser Pro relies on numbers from sources approved by the Commissioner, such as the Department of Labor and the Bureau of Labor Statistics. (Doc. 28 p. 26). Defendant argues that Plaintiff has failed to show that the VE's testimony regarding the number and type of occupations available to someone with Plaintiff's RFC is unreliable because it is based upon data contained in Job Browser Pro. (Doc. 28 p. 26).

At the administrative hearing, the VE testified that a hypothetical individual with Plaintiff's age, education, work experience and RFC could perform the jobs of silver wrapper, hotel housekeeper, merchandise marker, and router. (Tr. 84-85). The VE identified each of these three jobs by their DOT number. (Tr. 84-85). The VE testified that there were 213,500 silver wrapper jobs in the national economy, 228,000 hotel housekeeper jobs in the national economy, 403,900 merchandise marker jobs in the national economy, and 74,500 router jobs in the national economy. (Tr. 84-85). When Plaintiff's counsel questioned the VE concerning how she derived her job number findings the following exchange occurred:

> Attorney: And lastly, Ms. Chapman, the—thank you—the numbers that you provided for the four positions, what is the source of those numbers that you're relying on?
>
> VE: That is the Department of Labor that is compiled by Job Browser Pro and it is updated every month and also updated every year based on the Labor Statistics National and Local statistics.
>
> Attorney: Okay. And so, do you use—you said you use the Job Browser Pro[] to look up the numbers?
>
> VE: Yes, I do.
>
> Attorney: Okay. And so you don't have to go to any particular source like the Bureau of Labor Statistics, the software program will do that for you?
>
> VE: I'm sorry, what?

> Attorney: I was just curious, so what you're saying, just to clarify you don't have to go look up anything in the Bureau of Labor Statistics yourself, the program compiles and gives you the numbers that you reported to us today?
>
> VE: Exactly, the program takes all of the different statistics, both national and local and State and takes them and you know, pretty much [INAUDIBLE] them in the program.
>
> Attorney: Okay.
>
> VE: So, that vocational consultants can use it in any kind of related work.
>
> Attorney: And it's my understanding, and correct me if I'm wrong that the Bureau of Labor Statistics compiles the job data and groups it by occupational employment surveys?
>
> VE: They do, but also the State and the local do it by not only OES, but by DOT.
>
> Attorney: By DOT? At only the State and local level?
>
> VE: Well, yes, they have to digest that information and based on what is received, then they are able then to extract that information and make the numbers be able to comply with the DOT—
>
> Attorney: And is that—
>
> VE: —under each OES group, there are the DOT numbers.
>
> Attorney: Okay. And in some case—and in some cases there's many DOT numbers per group?
>
> VE: I couldn't hear you—
>
> ALJ: He said in some cases, there are many DOT numbers for a group?
>
> VE: Oh, yes, there are, of course.
>
> Attorney: Okay. All right. I think that's all the questions I have. Thank you so much.

(Tr. 90-91).

In recent years several cases have addressed the issue of whether an ALJ may rely on the testimony of a VE who derived job numbers data from computer software such as Job Browser

-13-

Pro. Some courts have found that a VE's exclusive reliance on software program without any testimony or evidence that the VE could endorse those numbers based on his or her personal knowledge and expertise rendered the testimony unreliable. *See Thompson v. Comm'r of Soc. Sec.*, 2016 WL 1008444, at *6 (M.D. Fla. Mar. 15, 2016). Other courts have affirmed the ALJ's reliance on the VE testimony when the VE relied on the software. *See Middleton v. Comm'r of Soc. Sec.*, 2018 WL 1371246, at *7 (M.D. Fla. Feb. 7, 2018) (collecting cases). In the joint memorandum, neither party cited to binding law on the issue.

Here, upon review of the record and the facts particular to this case, the Court finds that the VE's reliance on Job Browser Pro does not warrant remand. Plaintiff never challenged the VE's qualifications at the administrative hearing and has not challenged her qualifications on review. As Defendant notes, Plaintiff has failed to provide any evidence demonstrating that the VE's numbers were flawed or would have differed or been reduced below the significant number threshold. The VE identified that there were over 900,000 jobs in the national economy that Plaintiff could perform. Even if these jobs numbers were reduced 99%, the number would still constitute a significant number in the national economy. *See Brooks v. Barnhart*, 133 F. App'x 669, 671 (11th Cir. 2005) (per curiam) (unpublished) (finding that 840 jobs constituted a significant number in the national economy to support an ALJ's step five determination).

There is no principle of administrative law or common sense that requires remand in quest of a perfect opinion and remand is not essential if it will amount to nothing more than an empty exercise. *Stanton v. Astrue*, 617 F.Supp.2d 1205, 1222 (M.D. Fla. 2008) (citing *Fisher v. Bowen,* 869 F.2d 1055, 1057 (7th Cir.1989) and *Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 656 (1st Cir. 2000)). Remanding this case simply to have the ALJ ask the VE if she could endorse the software

job numbers based on her personal knowledge and expertise would be an empty exercise and a waste of time.

### d) Whether the ALJ erred by relying on the testimony of a vocational expert whose testimony conflicted with the Dictionary of Occupational Titles.

Plaintiff argues that the ALJ erred by relying on the testimony of the VE which was inconsistent with the DOT. (Doc. 28 p. 27-31). Specifically, Plaintiff argues that the VE testimony was inconsistent with the DOT because the ALJ limited Plaintiff to "simple and routine and repetitive job assignments" and all the jobs the VE provided had a reasoning level of 2 or 3 requiring performing detailed instructions. (Doc. 28 p. 31). In response, Defendant argues that there was no inconsistency between the VE's testimony and the DOT and the ALJ properly relied on the VE's testimony.

In this case, the Court finds that there was no inconsistency between the VE's testimony that Plaintiff could perform the jobs silver wrapper, merchandise marker, and router and the DOT. The Eleventh Circuit and other circuits have held that no conflict exists between a limitation to simple, routine tasks and a DOT reasoning level of 3. *See Hurtado v. Comm'r of Soc. Sec.*, 425 F. App'x 793, 795-96 (11th Cir. 2011); *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009); *Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007). Accordingly, the Court does not find it appropriate to remand this case for the ALJ to make additional findings at Step 5 as Plaintiff requests.

### III. Conclusion

The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on September 21, 2018.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties